MILLER, CROSS-APPELLEE, *v.* NELSON-MILLER, CROSS-APPELLANT.

[Cite as *Miller v. Nelson-Miller,* 132 Ohio St.3d 381, 2012-Ohio-2845.]

*Civil procedure—Civ.R. 58—Effect of judge's failure to sign judgment entry.*

(No. 2011-1172—Submitted April 4, 2012—Decided June 27, 2012.)

CROSS-APPEAL from the Court of Appeals for Delaware County,

No. 10 CAF 09 0074, 2011-Ohio-2649.

_____

SYLLABUS OF THE COURT

In a court that properly has jurisdiction over the subject matter and the parties, the
court's noncompliance with the ministerial duties of Civ.R. 58(A) renders
the judgment voidable and not void.

_____

MCGEE BROWN, J.

{¶ 1} Appellant, Rebecca S. Nelson-Miller, as administrator of the estate of Norman Leslie Miller, cross-appeals from a decision of the Fifth District Court of Appeals that held that the 2005 agreed judgment entry of divorce between Norman and cross-appellee, Beth Miller, n.k.a. Knece, was void for noncompliance with Civ.R. 58(A) due to the trial court's improper delegation of its judgment-entry signatory duties to a magistrate. We are asked to determine whether the trial court's noncompliance with the signature requirement of Civ.R. 58(A) caused the 2005 judgment entry to be void or merely voidable. We hold that where a court possesses jurisdiction over the parties and subject matter, mechanical irregularities regarding the trial court's signature render the judgment voidable, not void.

**Factual and Procedural Background**

{¶ 2} Norman and Beth were married from 1990 to 2004, when Beth filed a complaint for divorce with the Domestic Relations Division of the Delaware County Court of Common Pleas, and Norman responded with a counterclaim for divorce. The case was referred to Magistrate Lianne Sefcovic. The parties agreed to temporary orders and scheduled a settlement conference to determine a final order on December 21, 2004.

{¶ 3} On December 27, 2004, a document captioned "Agreed Judgment Entry (Decree of Divorce)" was filed with the trial court" The agreement contained a number of handwritten revisions, approval of each of which was indicated by Norman's and Beth's initials. The agreement was signed by both parties and their counsel. In the space provided for the judge's signature, Magistrate Sefcovic signed Judge Everett Krueger's name, followed by the magistrate's initials. On the same day, a shared-parenting decree with an agreed shared-parenting plan was filed, again bearing the signatures of the parties and their counsel, and with a signature for Judge Krueger followed by the magistrate's initials. On October 14, 2005, the trial court entered a judgment entry decree of divorce, sua sponte adopting the December 27, 2004 memorandum of agreement and incorporating it in a final agreed decree of divorce. Again, the judge's signature was provided by proxy with the magistrate's initials.

{¶ 4} In March 2007, Norman moved to amend the shared-parenting plan and recalculate child support, and an agreed entry was issued in July 2007. The parties did not contest the validity of the 2005 divorce decree while resolving their postdecree issues. Relying on the 2005 divorce decree, Beth obtained a new marriage license and remarried in August 2007. Norman remarried as well, in October 2008.

{¶ 5} In April 2009, Beth moved to vacate the 2005 divorce decree and to strike the 2004 agreed judgment entry, arguing that the entries were void for

failure to comply with Civ.R. 58(A) due to the improper signature by Magistrate Sefcovic in place of Judge Krueger. For purposes of the 2009 proceedings, Judge Krueger filed an affidavit stating that he had given Magistrate Sefcovic the authority to sign the judge's name to all judgment entries that were agreed to and approved by the parties.

{¶ 6} Following an evidentiary hearing, Magistrate David Laughlin issued a decision upholding the validity of the 2005 divorce decree and the 2004 agreed judgment entry. The magistrate stated that Judge Krueger had validly authorized and directed Magistrate Sefcovic to provide his signature for agreed-upon entries that would not involve "any contest or independent adjudication." The decision reasoned that the error alleged by Beth would be voidable at most, and not subject to collateral attack. The decision further stated that the alleged error, as voidable, had been waived by both parties in their failure to file objections and their reliance on the enforceability of the divorce decree for the purpose of remarrying and for renegotiating the shared-parenting plan.

{¶ 7} Beth filed timely objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision. Beth then appealed to the Fifth District Court of Appeals. While the appeal was pending, the appellate court was notified that Norman had passed away on January 25, 2010. His surviving spouse, Rebecca Nelson-Miller, as administrator of Norman's estate, was substituted as a party in this matter.

{¶ 8} In May 2011, the Fifth District reversed and remanded the trial court's decision, holding that Civ.R. 53 does not permit a magistrate to enter judgments and that the trial court therefore did not have the authority to delegate the duty of signing agreed judgment entries. The Fifth District further held that Civ.R. 58 requires the trial court's signature, that a judgment without the signature of the trial court is simply not a judgment, and that the 2005 divorce decree was therefore void because it was not personally signed by the trial judge.

**{¶ 9}** On remand, the trial court issued a judgment entry dated June 7, 2011, which stated that "the undersigned Judge hereby substitutes his original signature below for [the 2004 agreed judgment entry, the 2005 divorce decree, and the 2007 postdecree judgment entry], effective the date of the original filing date for each thereof, and as if fully signed in the previous entry."

**{¶ 10}** Beth sought this court's review, arguing that the divorce action abated upon Norman's death and that the appellate court should have dismissed the entire divorce action rather than remanding. Norman's estate cross-appealed, arguing that the trial judge's authorization to the magistrate satisfied the signature requirement of Civ.R. 58 and alternatively arguing that the error was voidable, rather than void. Of the foregoing arguments, this court accepted jurisdiction only over the following proposition of law in the cross-appeal: "If the trial court fails to comply with the signature requirement of Civ.R. 58(A) by failing to personally sign the judgment entry, the resulting judgment is voidable, not void, and may be attacked only through a direct appeal. A party is estopped from collaterally attacking the validity of the judgment."

### Analysis

**{¶ 11}** Civ.R. 58(A) is titled "Preparation; entry; effect" and provides that an entry of judgment is effective once (1) the court prepares the judgment, (2) the court signs the judgment, and (3) the court clerk enters the judgment upon the journal. The parties concede for purposes of this appeal that the Ohio Rules of Civil Procedure do not allow the trial court to delegate its signatory duties to a magistrate. The sole question for us to resolve is whether the improper signature causes the judgment to be void, or whether it is an error that renders the judgment merely voidable. We hold that it is the latter.

**{¶ 12}** This court has long held that the question of whether a judgment is void or voidable generally depends on "whether the Court rendering the judgment has jurisdiction." *Cochran's Heirs' Lessee v. Loring*, 17 Ohio 409, 423 (1848).

"The distinction is between the lack of power or want of jurisdiction in the Court, and a wrongful or defective execution of power. In the first instance all acts of the Court not having jurisdiction or power are void, in the latter voidable only. A Court then, may act, first, without power or jurisdiction; second, having power or jurisdiction, may exercise it wrongfully; or third, irregularly. In the first instance, the act or judgment of the Court is wholly void, and is as though it had not been done. The second is wrong and must be reversed upon error. The third is irregular, and must be corrected by motion."

*Id.* at 423, quoting *Paine's Lessee v. Mooreland*, 15 Ohio 435, 445 (1846). Thus, a judgment is generally void only when the court rendering the judgment lacks subject-matter jurisdiction or jurisdiction over the parties; however, a voidable judgment is one rendered by a court that lacks jurisdiction over the particular case due to error or irregularity. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶ 10, 15.

{¶ 13} In *J.J.*, a magistrate contravened Sup.R. 4(B), which gives administrative judges the sole authority to transfer cases, when the magistrate transferred a custody case to a visiting judge. *Id.* at ¶ 5, 16. Like the appellee in the present case, the appellee in *J.J.* argued that because the magistrate acted outside of his authority, the resulting proceedings were void. *Id.* at ¶ 6. This court took the opportunity to explain the important distinctions between subject-matter jurisdiction and jurisdiction over a particular case and concluded that while the Rules of Superintendence did not give the magistrate the authority to transfer cases, the magistrate's improper transfer had no effect on the subject-matter jurisdiction of the court. *Id.* at ¶ 16. Rather, the magistrate's action constituted a

mere procedural irregularity that affected the court's jurisdiction over the particular case, resulting only in a voidable judgment. *Id.* at ¶ 15. As a consequence of the judgment's being a voidable rather than a void judgment, the appellant in *J.J.* waived the procedural irregularity by failure to raise a timely objection. *Id.* at ¶ 16.

{¶ 14} This court was following the same principles when it decided *State ex rel. Lesher v. Kainrad*, 65 Ohio St.2d 68, 417 N.E.2d 1382 (1981). In *Lesher*, a couple attended their divorce hearing before a referee and on that same day filed an agreed entry of divorce, which was signed by both parties and the trial judge. No referee's report was filed between the time of the hearing and the time of the final entry, as required by former Civ.R. 53(E). Years later, the husband filed a mandamus action, alleging that the divorce decree was void for failure to comply with Civ.R. 53 and therefore subject to collateral attack. "In order to avoid finding many alleged divorces complete nullities," this court held that the failure to comply with Civ.R. 53 rendered the judgment voidable, not void. *Id.* at 71, following *Eisenberg v. Peyton*, 56 Ohio App.2d 144, 150, 381 N.E.2d 1136 (1978) ("To hold that failure to follow Civil Rule 53 terminates jurisdiction and voids all actions and judgments entered by the trial court flies in the face of well-established law and such a result was obviously not the intention of this Court").

{¶ 15} Some of Ohio's appellate courts have extended the principles espoused in *Lesher* to other instances of noncompliance with Civ.R. 58. *See, e.g., Platt v. Lander*, 2d Dist. No. 12371, 1991 WL 76767 (May 7, 1991); *Beal v. Beal*, 5th Dist. No. CA 2182, 1984 WL 7428 (Apr. 3, 1984); *Lamb v. Lamb*, 2d Dist. No. 92-DM-1074, 2011-Ohio-2970. In *Platt*, the Second District held that although a rubber stamp of a judge's signature violates Civ.R. 58, the final order bearing the stamp is voidable, not void. In *Beal*, the Fifth District upheld the validity of a divorce where the divorce decree was originally signed only by a referee and subsequently signed by a trial court judge in a nunc pro tunc entry.

6

Because the appellant in that case waited nine years before challenging the validity of the divorce and had filed no direct objections to the decree, the court held that the appellant's due-process rights were not violated and upheld the divorce as final.

{¶ 16} In *Lamb,* the Second District continued with its reasoning in *Platt* and held that the " 'lack of a signature on a judgment does not constitute a jurisdictional defect.' * * * Rather, '[it] is an irregularity or defect which has no effect upon the jurisdiction of the trial court.' " *Lamb* at ¶ 12, quoting *Brewer v. Gansheimer*, 11th Dist. No. 2001-A-0045, 2001 WL 1182934, *2 (Oct. 5, 2001). The Second District went on to hold that regardless of whether an appellate court would be permitted to correct a Civ.R. 58 error in a direct appeal, or whether the error must instead be corrected by a timely motion to the trial court due to the lack of a final, appealable order, the error does not render the judgment void, and an appellant is estopped from collaterally attacking the judgment after failing to timely object or appeal. *Lamb* at ¶ 13.

{¶ 17} The crux of the appellee's argument in the case at hand is the same as the appellant's unsuccessful argument in *Lamb*: that the lack of a valid signature rendered the judgment void. We find our previous decisions in *Lesher* and *In re J.J.* to be analogous and the reasoning of *Lamb* to be persuasive, and we therefore hold that the lack of a valid signature is an irregularity that has no bearing on the subject-matter jurisdiction of the trial court and renders the judgment voidable rather than void.

{¶ 18} In addition to the fundamental jurisdictional justifications for finding a defectively signed divorce decree to be voidable rather than void, we also find that there are public-policy reasons supporting this conclusion. First, we have a strong interest in preserving the finality of judgments. Finality produces " 'certainty in the law and public confidence in the system's ability to resolve disputes.' " *Strack v. Pelton*, 70 Ohio St.3d 172, 175, 637 N.E.2d 914 (1994),

quoting *Knapp v. Knapp*, 24 Ohio St.3d 141, 144-145, 493 N.E.2d 1353 (1986). If delayed attacks such as the appellee's were possible, domestic court decisions would be perpetually open to attack, and finality would be impossible. *In re Hatcher*, 443 Mich. 426, 440, 505 N.W.2d 834 (1993). Here, the parties received full notice of the merits of the 2004 agreed entry and 2005 divorce decree, the defective signature was easily discoverable, it in no way infringed on the parties' due-process rights, and the parties explicitly relied on the validity of the underlying divorce in order to remarry. "Clearly as a matter of common sense, common law, and common justice, [the appellee] ought not, after concurring in the order for [over three] years, be thereafter heard to complain by a collateral attack * * *." *Heflebower v. Heflebower*, 102 Ohio St. 674, 678, 133 N.E. 455 (1921).

{¶ 19} Second, and more specifically, a declaration that every divorce decree that does not fully comply with Civ.R. 58 is void and null would be "pregnant with fearful consequences." *Bingham v. Miller*, 17 Ohio 445, 448 (1848). In *Bingham*, although this court declared the legislature's 40-year practice of granting divorces to be unconstitutional, we refrained from declaring the acts of divorce to be void, because "second marriages have been contracted, and children born, and it would bastardize all these." *Id.* In the present case, it was the longstanding practice of the Domestic Relations Division of the Delaware County Court of Common Pleas to assign magistrates the task of signing agreed entries of divorce, meaning that hundreds or thousands of uncontested divorces will be affected by this decision. Long-reaching consequences would affect later marriages, children, all subsequent tax filings, inheritance, property divisions, estate plans, and numerous other proceedings and rights. To declare all divorce decrees with faulty signatures to be void ab initio would create absolute chaos. By declining to make such a declaration, we avoid the mass nullification of final judgment entries of divorce and the confusion that would certainly ensue.

**{¶ 20}** In a court that properly has jurisdiction over the subject matter and the parties, the court's noncompliance with the ministerial duties of Civ.R. 58(A) renders the judgment voidable and not void. Neither party sought any timely objection or appeal from the 2005 divorce decree, and we hold that the appellee's attempted collateral attack on the trial court's voidable judgment entry in 2009 was untimely and improper.

### Conclusion

**{¶ 21}** For the foregoing reasons, we reverse the decision of the court of appeals, and we reinstate the trial court's 2005 judgment entry decree of divorce.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

**LANZINGER, J., concurring.**

**{¶ 22}** After acknowledging that the trial court has no authority to delegate signature on entries (i.e., the court has a duty to sign entries pursuant to Civ.R. 58), the majority cites two cases decided over 150 years ago to explain why the judgment entry in question was voidable rather than void. " 'The distinction is between the lack of power or want of jurisdiction in the Court, and a wrongful or defective execution of power. In the first instance all acts of the Court not having jurisdiction or power are void, in the latter voidable only.' " *Cochran's Heirs' Lessee v. Loring*, 17 Ohio 409, 423 (1848), quoting *Paine's Lessee v. Mooreland*, 15 Ohio 435, 445 (1846). It is only in the last few years that this court has disregarded the distinction in criminal cases. *See State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961; *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568; *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958; *State v. Fischer*, 128 Ohio

St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332; *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, ___ N.E.2d ___.

{¶ 23} In holding that when a court possesses jurisdiction over the parties and subject matter, mechanical irregularities regarding the trial court's signature render the judgment voidable, not void, the majority reaffirms the traditional distinction between the terms "void" and "voidable." I heartily concur and only hope that this analysis will also extend to our criminal cases in the future.

_____

Elizabeth N. Gaba, for cross-appellee.

Douglas W. Warnock Co., L.P.A., and Douglas W. Warnock; and Bricker & Eckler, L.L.P., and Matthew W. Warnock, for cross-appellant.

_____